J-S10024-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
JUSTIN LEE ROSENCRANCE :
:
Appellant : No. 1116 MDA 2020

Appeal from the PCRA Order Entered August 10, 2020
In the Court of Common Pleas of Lebanon County Criminal Division at
No(s):  CP-38-CR-0000527-2017

BEFORE:   MURRAY, J., McLAUGHLIN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY McLAUGHLIN, J.:                **FILED JULY 02, 2021**

Justin Lee Rosencrance appeals from the order denying his Post

Conviction Relief Act petition. **See** 42 Pa.C.S.A. §§ 9541-9546. He asserts that

trial counsel rendered ineffective assistance by failing to obtain an expert to

refute the testimony of the Commonwealth's medical expert.  We affirm.

On April 18, 2018, a jury convicted Rosencrance of two counts of

aggravated assault and one count of simple assault.[1]

> At the jury trial, the evidence established that [Rosencrance] and
> his girlfriend began to babysit the victim at their home in
> September 2016. On December 7, 2016, the victim appeared ill
> when his father picked him up from [Rosencrance's] home. On
> December 9, 2016, the victim began to experience seizures and
> was taken to Hershey Medical Center ("HMC") where he was found
> to have suffered multiple serious injuries, including a subdural
> hematoma, significant retinal hemorrhaging in both eyes, blood

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 18 Pa.C.S.A. §§ 2702(a)(8), 2702(a)(9), and 2701(a)(1), respectively.

around the brain, neck and ear bruising, and damage to the ligaments that hold the spine in place.

Detective Matthew Brindley of the Lebanon County Detective Bureau interviewed [Rosencrance] as part of his investigation of the case. At the trial, Detective Brindley testified that [Rosencrance] had admitted to him that on December 7, 2016 he became frustrated with the child, had picked him up under his armpits and shook him, and then threw him down onto a beanbag chair. Detective Brindley also read from [Rosencrance's] written statement, in which [Rosencrance] stated:

> [The victim] was having a fit, and in an attempt to soothe him, I picked him up under his arms, he screamed more, started fussing, so I snapped. I gripped him up, gave him a shake, asked "what is wrong with you?" And tossed him on the sack (cushion) in our living room next to the pack-and-play. . . . It kills me inside knowing it was me.

*   *   *

Dr. Lori Frasier, the Medical Director of the HMS Child Protection Team was present when the victim arrived at HMS on December 9, 2016. At the trial, Dr. Frasier testified that the victim had suffered horrific injuries and concluded that they were the result of abuse which would have occurred within two to three days prior to the seizure. This placed the abuse as possibly occurring on December 7, 2016, when the victim was under [Rosencrance's] care. Dr. Frasier testified that shaking a nine-month-old child and throwing him down on a cushion was consistent with the nature and timing of the injuries. Dr. Frasier acknowledged that the victim had sustained another chronic subdural hematoma prior in time to these injuries, but explained that the new injuries were unrelated to the older one. Dr. Frasier also discounted the possibility of the injuries being caused by the actions of the victim's four-year-old sibling.

PCRA Ct. Op., 8/10/20, at 2-4 (record citations omitted).

The court sentenced Rosencrance to 54 to 120 months of incarceration.

He appealed, but this Court dismissed the appeal for failure to file a brief. **See**

Order, 6/28/19, at docket no. 2078 MDA 2018.

Rosencrance filed a timely *pro se* petition for post conviction collateral relief on January 9, 2020. The PCRA court appointed counsel, who filed an amended petition alleging various claims of ineffective assistance of trial counsel. The PCRA court held a hearing, which it summarized as follows:

> At the hearing, [Rosencrance] testified that he had hired trial counsel to conduct his defense approximately a year and a half prior to trial and that trial counsel continued with his representation throughout his trial and sentencing. [Rosencrance] explained that he decided to go to trial because he felt that, while he was guilty of the less serious charges, he was not guilty of aggravated assault:
>
>> I did not feel like I was completely guilty of all the charges that were filed. While I did feel like I was guilty of the simple assault and the endangering the welfare, I did not believe that I was guilty of the aggravated assault, the bodily injury, or the aggravated assault.
>
> N.T. PCRA Hr'g, 5/28/20, at 9.
>
> [Rosencrance] complained that trial counsel did not file any pretrial motions and that no witnesses were called to testify on his behalf at trial. Prior to trial, he and trial counsel had discussed obtaining an expert witness to testify at trial in order to refute Dr. Frasier's anticipated testimony on behalf of the Commonwealth.
>
> * * *
>
> [Rosencrance] further testified that he felt his attorney had erred in failing to obtain an expert witness to refute Dr. Frasier's testimony. He explained that he would have provided the funds necessary to hire an expert, but that trial counsel never explained to him why an expert was not hired despite obtaining a continuance in order to locate a defense expert for trial.
>
> Trial counsel was also called to testify at the PCRA hearing. He explained that he and [Rosencrance] had discussed hiring an expert to testify for his case in chief because they anticipated that the Commonwealth would call Dr. Frasier to testify about the victim's injuries. Trial counsel explained that there was a problem with obtaining an expert because of the brain injury that was

sustained prior to the injuries at issue in this matter, and he could not find an expert who could place that older injury outside of the timeframe when the child was under [Rosencrance's] care. Trial counsel noted that the information regarding the prior injury did come out during the course of the jury trial and he did not feel that it was prudent to present an expert who was unable to counter Dr. Frasier's testimony.

\* \* \*

On cross-examination, trial counsel explained that he was unable to find an expert to testify as to who caused the child's injuries. He had attempted to find an expert through a former colleague who worked on shaken baby cases at the Pennsylvania Innocence Project. That individual had arranged for several potential experts to examine the case; however, all of them provided the same response—that the victim had definitely been injured previously but there remained a question as to who had caused those previous injuries. Trial counsel could not recall whether he discussed this information with [Rosencrance] prior to trial.

PCRA Ct. Op., at 5-8 (record citation formatting altered; some capitalization omitted).

The PCRA court dismissed Rosencrance's petition. This timely appeal followed. Rosencrance raises one issue:

Was trial counsel ineffective when he failed to obtain the services of an expert to refute the testimony of Commonwealth witness Dr. Lori Frasier who testified at trial regarding the likelihood of the injuries to the victim were caused by [Rosencrance] shaking and throwing victim on a cushion, when victim had sustained another chronic subdural hematoma prior in time to these injuries?

Rosencrance's Br. at 4 (unnecessary capitalization omitted).

On appeal from the denial of PCRA relief, "we must determine whether the ruling of the PCRA court is supported by the record and is free of legal error." **Commonwealth v. Spotz**, 18 A.3d 244, 259 (Pa. 2011). "The PCRA

court's credibility determinations, when supported by the record, are binding on this Court." *Id.* "However, this Court applies a *de novo* standard of review to the PCRA court's legal conclusions." *Id.*

"Counsel is presumed to have been effective." ***Commonwealth v. Andrews***, 158 A.3d 1260, 1263 (Pa.Super. 2017). A petitioner claiming otherwise must show that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable basis for the challenged action or inaction; and (3) the petitioner suffered actual prejudice as a result. ***Commonwealth v. Spotz***, 84 A.3d 294, 311 (Pa. 2014). Failure to satisfy any one prong of this test will result in denial of the claim. *Id.*

To establish counsel was ineffective for failing to call a witness, the petitioner must prove:

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

***Commonwealth v. Johnson***, 966 A.2d 523, 536 (Pa. 2009) (quoting ***Commonwealth. v. Washington***, 927 A.2d 586, 599 (Pa. 2007)).

Rosencrance claims that counsel knew that the child had an older brain injury that had not been treated, and argued that counsel should have hired an expert to opine that the previous brain injury could have caused the subdural hematoma. *See* Rosencrance Br. at 14-15. Rosencrance claims that

counsel's failure to hire an expert to testify at trial prejudiced him and harmed his ability to provide an effective defense. *See id.* at 16.

The PCRA court rejected this claim because Rosencrance had not demonstrated that any expert existed who was available to testify at trial that "the new subdural hematomas could have resulted from the older brain injury which had been never been diagnosed or treated." PCRA Ct. Op. at 9. The court further concluded that trial counsel had a reasonable basis for his actions:

> Trial counsel related that his attempts at securing an expert who could testify on this issue were unsuccessful and that the question of who was responsible for any of the victim's injuries would still remain even if such expert testimony was presented. We believe it was a reasonable decision on the part of trial counsel to avoid presenting any evidence which had the potential to bolster the Commonwealth's case when such evidence would not counter Dr. Frasier's testimony.

PCRA Ct. Op. at 9-10 (some capitalization omitted).

The PCRA court's conclusion that Rosencrance failed to establish that a witness existed and was available to testify for the defense is supported by the record and is free from legal error. Although Rosencrance claims that counsel was ineffective for failing to identify a witness, he, too, failed to do so in presenting this appeal. It is the petitioner's burden to establish an ineffectiveness claim. Rosencrance has not proven that a witness existed who was available and willing to testify for the defense. His ineffectiveness claim therefore fails.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/2/2021